**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SUSAN VILLEGAS-COMISKEY,

    Plaintiff,

v.   NO. 10-CV-972 WJ/WDS

CHERYL WILSON and
SOCORRO CONSOLIDATED SCHOOLS,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (**doc. 32**), filed August 25, 2011. Having considered the parties' briefs and the applicable law, the Court finds that Defendants' motion is well taken and is, therefore, **GRANTED** for the reasons herein stated.

## BACKGROUND

**I.    Procedural History**

Plaintiff Susan Villegas-Comiskey was employed as the assistant high school principal of Socorro High School at the time that applicable events began in this case. Between 2007 and 2010, four events occurred which form the basis for Plaintiff's claims. First, she was not hired as the Socorro High School principal in 2007. Second, she was not hired for the same position as high school principal again in 2009. Third, she was placed on administrative leave with pay and received a letter of reprimand for an incident involving a student in November, 2009. Finally, she was transferred from the position of assistant high school principal to Supervisor of

Special Education and the Student-Based Health Clinic in July, 2010.

Plaintiff filed her Complaint (doc. 1) on October 13, 2010, alleging Section 1983 equal protection and due process violations (Count I), interference with contractual rights based upon a collective bargaining agreement (Count II), gender discrimination under Title VII (Count III) and interference with a contract of employment because of race (Count IV). Upon a liberal reading of the pleadings, Plaintiff also could be understood to allege discrimination based on gender and sex under Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act (Count III); Retaliation under Title VII of the Civil Rights Act of 1964 (Count V); Section 1983 Equal Protection Claims (Counts I and V); and tortious interference with an employment contract (Count IV). On August 25, 2011, Defendants filed the instant Motion for Summary Judgment. (Doc. 32.)

## II.     Undisputed Material Facts

As the Court undertakes the task of sorting through the undisputed material facts in this case, it notes at the outset that the majority of Plaintiff's proffered facts are non-responsive and irrelevant to the issues at hand. In her response to Defendants' motion, Plaintiff includes little argument, having essentially cut and pasted passages from Plaintiff's affidavit. Certain passages were repeated verbatim in successive paragraphs, despite being non-responsive to any of the particular facts that were allegedly "disputed." Blatant misstatements of facts appear,[1] as well as large amounts of inadmissible and unsubstantiated hearsay. Most of the recitations in Plaintiff's motion involve disputing the wisdom or correctness of Defendant Wilson's actions in the

---

[1] For example, in doc. 33 at 3, Plaintiff states: "There is no dispute that . . . [i]n 2007, Ms. Comiskey was not selected for the position of Socorro High School principal, and a less qualified non-Hispanic was selected instead" when in fact it is undisputed that the candidate selected for the principal position, Mr. Trujillo, is indeed Hispanic.

exercise of her discretion, rather than allegations of race- and sex-based discrimination, which should be the focus of Plaintiff's proffered evidence.

Therefore the Court considers it futile to recite every fact or dispute thereof alleged by Plaintiff; instead the Court will confine the recitation to only those allegations that are actually relevant to the inquiry, and hold only those facts to be in dispute that are supported by potentially admissible evidence, rather than mere unsubstantiated assertions.

*A. 2007–2008 Principal Position*

In 2007, school administrators solicited applications for the position of high school principal for Socorro High School. Plaintiff was not hired for that position. Plaintiff's overall qualifications were ranked lower by the hiring committee than those of other interviewed candidates; among other things, Plaintiff had no experience as a principal, while the candidate who was eventually selected for the position, Mr. Trujillo, had several years experience as a high school principal.

*B. 2009 Principal Position*

In May 2009, there being a second vacancy in the Socorro High School principal position, applications were again solicited. This time there were two separate application periods; after the first application period, the highly rated candidates received unfavorable results of background checks, and therefore applications were solicited a second time. Plaintiff was neither interviewed nor hired for the position during either application period. During the first application period, Plaintiff submitted an email stating her interest in the position at 4:39 pm the day that the application period was to close at 5:00 pm, stating: "Cheryl I have thought long and hard about applying for the principal's position. I would like to apply for the principal's position, I will get the information sent down tomorrow." (*See* doc. 33-3 at 1.) The email did

3

not contain a resume or any other application materials.  Those materials were not submitted on Friday; instead, a resume, unaccompanied by a cover letter or any other traditional application materials, was submitted several days later, well after the application period closed.  Plaintiff was not interviewed and didn't pursue the application further at that time.

It is unclear exactly what transpired during the second application period; however, it appears that Plaintiff submitted a timely application.  Plaintiff was not hired for the position; instead, Mr. Craig DeYoung was hired.  Plaintiff still had never served as a principal, although she offers some evidence that she held many or all of the duties of a principal for a few months.  Nevertheless, Mr. DeYoung did have several months of experience as an interim principal.

Plaintiff was not hired for the position of principal, and so she entered into a written contract as a certified (licensed) administrator for the Socorro High School assistant principal position during the 2009-2010 school year.

### C.  Administrative Leave

In the fall of 2009, Plaintiff had an encounter with a student in which, upon having her demand for the female student's cell phone rebuffed, Plaintiff followed the student into the restroom, and eventually confronted the student in a bathroom stall.  On November 3, 2009, Plaintiff was placed on administrative leave with pay from her position as assistant principal.  The stated purpose of the administrative leave was not punitive; it was intended to provide an opportunity for investigation into the above incident, and a determination as to whether Plaintiff acted prudently or imprudently.  Plaintiff spoke with her supervisors several times about the incident, discussing her version of the events at least to some degree.  An investigation was conducted by Defendant Wilson and 9th Grade Dean of students Georgia Magoffe, during which the parent of the student in question expressed concern that Plaintiff had previously acted

improperly with regard to the same student. After the investigation, Defendant Wilson concluded that Plaintiff had acted improperly by violating the student's privacy.

On November 6, 2009, Plaintiff received a written reprimand as a result of the incident. Plaintiff did not suffer any loss in pay because of the incident, and her duties were not changed, except that the reprimand stated:

> In the case of this particular student, you will not be the administrator to discipline her unless you are the only administrator available and her behavior is either a safety risk to self or others or extremely and immediately disruptive. Referrals for her discipline should be given to Mr. DeYoung. If you observe something like inappropriate cell phone use or other inappropriate behavior in the common areas, please refer that to Mr. DeYoung as well.

(Doc. 32 ex. D.)

On December 16, 2009, Plaintiff filed charges of discrimination based on sex, national origin, and retaliation with the EEOC. On July 15, 2010, the EEOC issued a Dismissal and Notice of Rights letter concerning the December 16, 2009, charge of discrimination.

### D. Transfer

The following summer, at the beginning of July, 2010, Plaintiff was transferred from the position of assistant principal at Socorro High School, and became the Supervisor of Special Education and the Student-Based Health Clinic. Plaintiff received essentially the same salary as a result of the transfer.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Only factual disputes that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  *Id.* at 248.  There is a "genuine issue" of material fact if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*  However, judgment is appropriate "as a matter of law" if the non-moving party fails to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998).

## II.     McDonnell Douglas Test

"A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination."  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir.2000).  A plaintiff who lacks direct evidence of discrimination may show discrimination through indirect evidence by relying on the framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  While *McDonnell Douglas* involved a Title VII claim, its burden-shifting analysis applies equally to § 1983 claims of race discrimination in violation of the Equal Protection Clause.  *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001).  The *McDonnell Douglas* framework also applies equally to § 1981 claims.  *Kendrick*, 220 F.3d at 1225–26 (citing *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999).  The *McDonnell Douglas* analytical framework also applies to an equal

protection claim based upon sex. *Hickman v. Flood & Peterson Ins. Inc.*, 766 F.2d 422, 424 (10th Cir. 1985) (citing *McDonnell Douglas*, 411 U.S. at 802).

To state a prima facie case of employment discrimination on the basis of sex or race, the Plaintiff must demonstrate that she (1) belongs to a protected class; (2) she applied and was qualified for the position for which she applied; (3) she was not hired for the position; and (4) the position remained open after Plaintiff was rejected. *Id.* "In order to survive summary judgment, a plaintiff relying on *McDonnell Douglas* bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action." *Id.* If a prima facie case is made, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for terminating the plaintiff. *Id.* "If the defendant successfully meets its burden of production, the burden shifts back to the plaintiff to put forth evidence sufficient to allow a jury to find that the defendant's reason is pretextual, e.g., that it is unworthy of belief." *Id.* This "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (internal quotations omitted).

### III.     Section 1983 Procedural Due Process

A protected property interest is defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U. S. 564 (1972). In an employment context this has been defined as a legitimate expectation in continued employment. *Id.* at 577. "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest

rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9 (1976).  The Tenth Circuit has held that independent sources of property rights may include: a state or federal statute; a municipal charter or ordinance; an express or implied contract; a written contract with tenure provisions; or a contract "implied" from policies and practices of a particular institution. *Calhoun v. Gaines*, 982 F.2d 1470, 1473 (10th Cir. 1992).

Thus, "to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); *see also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered.").  In the context of a procedural due process claim, it is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process.  *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir.1998).

## DISCUSSION

**I.     Discrimination under Title VII, 1983, 1981**

Defendant alleges discriminatory treatment in violation of Title VII, § 1983, and § 1981, based on all four incidents.  Plaintiff offers no direct evidence of discrimination throughout her response to Defendants' motion; therefore the analysis under all these claims mercifully follows the same general *McDonnell Douglas* burden shifting framework.  Therefore, the Court will apply the *McDonnell Douglas* analysis in turn to each separate incident upon which Plaintiff bases her claims of discrimination.

A.      *2007–2008 Principal Position*[2]

In order to establish a prima facie case of discrimination for not being hired for the high school principal position in 2007, Plaintiff must establish that (1) she is a member of a protected class; (2) she applied and was qualified for the position for which she applied; (3) she was not hired for the position; and (4) the position remained open after Plaintiff was rejected.  *Hickman*, 766 F.2d at 424.

Plaintiff has failed to establish these prongs.  She has established two of the prongs: (1) she is a member of a protected class and (3) she was not hired for the position.  However, she has admitted that she was relatively unqualified for the position: the Hispanic man who was hired had prior experience as a principal, and Plaintiff did not.  Prior experience was clearly an important element of a candidate's qualifications in the hiring decisions for the position of high school principal, and Defendant Wilson saw it as crucial in evaluating candidates.  Therefore, while Plaintiff was not absolutely unqualified (prior experience was not an absolute necessity), she was unqualified relative to the candidate who was eventually hired because she was significantly less qualified than other candidates.  Therefore the undisputed facts do not support an inference of discrimination, and Plaintiff does not make out a prima facie case of discrimination.

Nevertheless, even had Plaintiff established a prima facie claim of discrimination for this incident, Defendants have provided a sufficient reason for not hiring Plaintiff: they hired another candidate with better qualifications in the relevant area.  This is clearly a legitimate non-

---

[2]The Court notes that Plaintiff presents no evidence that she satisfied the exhaustion requirements for her Title VI claims as to this events.  Nevertheless, as the claims fail on the merits, no further discussion of failure to exhaust is necessary.

discriminatory reason for failing to hire Plaintiff, and she has provided no evidence to show that this proffered reason is a mere sham or pretext. Therefore Plaintiff's claim would still fail.

### B.     2009 Principal Position

Plaintiff's claims fare little better as to Defendants' failure to hire her for the principal position in 2009. In that year there were two separate hiring periods for the principal position. During the first hiring period, Plaintiff failed to properly apply. While she submitted an email regarding her intention to apply just before the deadline ended, she did not submit her application materials until several days after the deadline. A deadline is a deadline, and Plaintiff's untimely application fails to satisfy the second element of the *McDonnell Douglas* analysis: that she (properly) applied and was qualified for the position for which she applied.

Although Plaintiff was timely in her application during the second hiring period, Plaintiff still has not established a prima facie case of discrimination. Plaintiff admits that she had no formal experience as a principal.[3] The candidate that was hired, Mr. DeYoung, had experience as an interim principal. While experience as a principal was not an absolute requirement, guidance from the New Mexico Public Education Department emphasized the importance of experience in the principal position for schools such as Socorro High School, which was in the restructuring stage of No Child Left Behind during this period. Therefore, though Plaintiff was not *absolutely* unqualified, she was *relatively* unqualified and therefore fails to establish a prima facie case of discrimination.

---

[3]Plaintiff admits in her deposition that she had no experience as a principal. In her affidavit, she claims that she "ran" a highschool for several months. Whatever this may mean, the Court will not give an affidavit more weight than Plaintiff's own deposition testimony made under oath. Therefore, whatever experience Plaintiff may have had during those four months in 2007, it was not formal enough for her to have considered it "experience as a principal" during her deposition. If Plaintiff herself does not consider herself to have had experience as a principal, the Court will not do otherwise.

Even if Plaintiff had established a prima facie case, Defendants offer legitimate reasons for not hiring her. They state that, in addition to Plaintiffs relative lack of experience and qualifications, she also lacked communication and inter-personal skills in dealing with staff, parents, and students. Defendant Wilson viewed these skills to be essential to success in the principal position. Therefore, Defendants would have carried their burden of providing a non-discriminatory reason for failing to hire Plaintiff.

Plaintiff provides no evidence that the proffered reasons for Defendants' decisions are mere shams or pretexts. Instead, she merely disputes that she lacked communication and inter-personal skills. However, the manager's perception of the employee's performance is relevant, not the "plaintiff's subjective evaluation of [her] own relative performance." *Furr v. Seagate Tech. Inc.*, 82 F.3d 980, 988 (10th Cir. 1996); *Bullington v. United Airlines*, 186 F.3d 1301, 1317 n.13 (10th Cir. 1999) (plaintiff's own assessment of his performance is not reliable evidence). Therefore, even if Plaintiff had successfully established a prima facie case of discrimination, she does not provide evidence that Defendants' non-discriminatory reasons for failing to hire her were sham reasons.

*C.  Suspension*

The requirements for a prima facie case based on suspension are slightly different than those for failure to hire. "A plaintiff in a discriminatory suspension case . . . makes out a prima facie case upon showing: (1) that plaintiff belongs to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). Here, Plaintiff succeeds in establishing a prima facie case.

First, Plaintiff belongs to a protected class.  Second, Defendants do not argue that Plaintiff's suspension was not an adverse employment action, and the Court concludes that it was sufficiently adverse to satisfy the second prong.  *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir.1998) ("Actions such as suspensions . . . are by their very nature adverse, even if subsequently withdrawn.").  Additionally, after Plaintiff's suspension, she was given a letter of reprimand.  Together, the suspension and the reprimand satisfy the second prong, that Plaintiff suffered an adverse employment action.

As to the third prong, Plaintiff provides evidence that other wrongdoing by fellow employees was not accorded either a suspension, a reprimand, or both.  Those employees were all male, and some were white, and therefore the fact that they were arguably punished less severely than Plaintiff creates at least an inference of discrimination.

Therefore, after considering the undisputed facts, and taking any disputed facts in the light most favorable to Plaintiff, the Court finds that she has established a prima facie case of discrimination.  Accordingly, under the *McDonnell Douglas* burden shifting framework the burden shifts to Defendants to provide a legitimate reason for the suspension and letter of reprimand.  They argue that the purpose of the suspension was to investigate the incident in question, and the reprimand was a legitimate determination by Defendant Wilson that Plaintiff's actions merited a reprimand.

The undisputed evidence is that Plaintiff followed a female student into the restroom in order to confiscate the student's cell phone, and that Plaintiff eventually accosted the student in a bathroom stall.  Defendants suspended Plaintiff in order to investigate the incident, and then issued the letter of reprimand because of their determination that Plaintiff's actions were inappropriate and thus deserved a reprimand reflecting that judgment.  Any differences in

treatment between Plaintiff and other employees was according to the subjective judgment of Defendant Wilson as to the proper course of action in each case.

This satisfies Defendants' burden, and consequently the burden shifts back to Plaintiff to show that this purported reason was a sham, and that the true reason was discriminatory. While Plaintiff's evidence of disparate treatment is enough to establish an initial inference of discrimination, it is not enough to show that Defendant's proffered reason is a pretext. Plaintiff shows only that on occasion, fellow employees of barely comparable position committed forms of wrongdoing of limited similarity to Plaintiff's, and were not disciplined in precisely the same way. This evidence falls short of establishing that Defendant Wilson's proffered reason is a pretext for discrimination.

In addition to the allegedly disparate treatment of other employees, Plaintiff provides at best some evidence that she personally disagrees with Defendant's course of action. Plaintiff must do more than evidence her *belief* that she was treated unfairly; she must provide the Court with something upon which a jury could conclude that she was treated unfairly *because of her race or sex*. Plaintiff has simply failed to do this. A Plaintiff's subjective belief that any disparate treatment is the result of racial or sexist animus does not satisfy the burden necessary to defeat summary judgment. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408–09 (10th Cir. 1997). Therefore, Plaintiff fails to carry her burden under the *McDonnell Douglas* framework, and her claim of discrimination fails as to her suspension and reprimand.

  D.   *Transfer*

Finally, Plaintiff argues that she was transferred as a result of discrimination and in retaliation for filing her complaint with the EEOC. To establish a prima facie case of discriminatory transfer, she must provide evidence that (1) she belongs to a protected class; (2)

she suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). To establish a prima facie case of retaliation, Plaintiff "must demonstrate that: (1) she engaged in protected opposition to discrimination; (2) [Defendants] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004). She fails to establish a prima facie case on either theory, because she cannot establish that her transfer was an adverse employment action, a requirement of both prima facie cases.

While Plaintiff provides evidence that in her opinion the new position is less desirable than the old one, she has made no showing that she received less pay, or that the position is a demotion in level. The pay is essentially the same, and both the new position and her former one as assistant principal are formally classified as administrator positions. Plaintiff states that in the new position she carries less prestige. However, Plaintiff offers no evidence that in any tangible way her new position is a demotion from her previous position. The mere fact that a plaintiff is unhappy with a transfer does not satisfy the requirement that the challenged employment action be adverse. Thus Plaintiff does not establish a prima facie case of retaliatory transfer.

Even if Plaintiff had established her prima facie case, Defendants have satisfied their burden of providing a legitimate reason for the transfer. Defendants provide evidence that Plaintiff was transferred because of Defendant's concern about Plaintiff's lack of support for the new high school principal. This concern comes from an email in which Plaintiff writes that she would not be the new principal's advisor, which Defendant Wilson took to be a lack of support for the new principal. Defendant Wilson reasonably felt that support by an assistant principal for

a new principal was a necessary part of the position. Defendant also says that the particular choice of transfer was intended to accord with Plaintiff's stated desire to be involved in special education.

Plaintiff does not provide any evidence that these stated reasons are pretexts. Instead, Plaintiff describes Defendant Wilson's reading of her email as "out of context" and "mistaken." Plaintiff may not have meant to express a lack of support for the principal, but that is irrelevant. What is relevant is whether Defendant Wilson's interpretation of the email was in fact the reason that Defendant transferred Plaintiff. If so, Plaintiff's claim must fail; and Plaintiff does not even argue, much less provide evidence, that Defendant Wilson's stated reason was a sham or pretext. Therefore, even if Plaintiff had established a prima facie case for retaliatory transfer, she would not have carried her burden to show that Defendants' proffered legitimate reason for the transfer was a sham, and that instead the purpose of the transfer was to discriminate against Plaintiff because of her race or sex, or to retaliate against Plaintiff for filing an EEOC complaint.

## II.    Due Process

"[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). Plaintiff has failed to present any evidence that she had a property interest in continuing in her position as assistant principal beyond the expiration of the 2009–2010 contract. She has offered no evidence whatsoever that there was a contractual right to continuation of that position, nor any evidence of any sort that her employer promised her or even led her to believe that she would continue in that position. Therefore, while she may have wanted to continue in her position (unless, of course, she could move into the principal position) she has shown the Court nothing

whatsoever supporting her contention that she had a property interest in continuing in the assistant principal position. Therefore, as she cannot have been deprived of a non-existent property interest, her due process claim must fail. *See, e.g.*, *Huang v. Board of Governors*, 902 F.2d 1134 (4th Cir.1990) (holding that the transfer of a tenured professor from one department to another, without loss of rank or pay, does not implicate any property interest protected by the Due Process Clause); *see also Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir.1988) (demotion from department chairman to professor not a denial of a protected property interest); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir.1985) (reduction of graduate student's teaching duties is not denial of a protected property interest)).

### III.     Contract-based Claims

In like manner, Plaintiff has presented no evidence that she had any contractual rights, explicit, or otherwise, to continued employment as the assistant principal beyond the expiration of her current contract for the year. In fact, she makes no argument whatsoever supporting her claim for interference with her contractual rights. Therefore, the Court concludes that her claims based on contractual rights must fail, and no further analysis or discussion is necessary on that point.

### CONCLUSION

For the reasons stated above, Plaintiff has not brought forward sufficient evidence to survive summary judgment on any of her claims. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE